64D01-1711-CT-010462

Porter Superior Court 1

Filed: 11/3/2017 2:50 PM
Clerk
Porter County, Indiana

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE PORTER SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF PORTER | ) | SITTING AT VALPARAISO, INDIANA |
| KIRK J. BLEDSOE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: ____-1711-CT-_____ |
| | ) | |
| MEDTRONIC, INC., | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Kirk J. Bledsoe, by and through his attorneys, Andrew J. Spica and John Mark Vouga of Vouga & Barnes, LLC, and hereby complains against the Defendant and requests a trial by jury as follows:

### INTRODUCTION

1. This is a product liability action brought by Plaintiff, Kirk J. Bledsoe (hereinafter "Mr. Bledsoe"), seeking relief, pursuant to the Indiana Products Liability Act ("IPLA"), codified as Indiana Code ("I.C.") §34-20-1-1, *et seq.*, for the Defendant's negligence and strict liability arising from injuries sustained as the direct and proximate result of a defective, implantable infusion pump manufactured, sold, and monitored by Defendant, Medtronic, Inc. ("Medtronic"), and/or its employees or agents, to Mr. Bledsoe.

2. Implantable infusion pumps are devices that are surgically implanted under the skin, typically in the abdominal region. They are connected to an implanted catheter and are used to deliver medications and fluids within the body. Implantable infusion pumps are periodically refilled with medications or fluids by a health care provider. Implantable infusion pumps may be used to treat chronic pain, muscle spasticity, and many other diseases or conditions.

3. Medtronic is one of the world's largest medical device companies, and has manufactured, sold, and monitored a number of defective, implantable infusion pumps over the past thirty (30) years. During this time period, Medtronic has been the subject of numerous warnings, recalls, and complaints regarding their defective infusion pumps through the Food and Drug Administration ("FDA").

4. A "Class 1 recall" is defined by the FDA as "a situation in which there is a reasonable probability that the use of or exposure to a violative product will cause serious adverse health consequences or death."

5. A "Class 2 recall" is defined by the FDA as "a situation in which use of or exposure to a violative product may cause temporary or medically reversible adverse health consequences or where the probability of serious adverse health consequences is remote."

1

## JURISDICTION AND VENUE

6. This action seeks to relief in the form of monetary damages he suffered as a direct and proximate result of a defective, implantable infusion pump manufactured, sold to him, and monitored by Medtronic.

7. Jurisdiction is conferred upon this Court by the IPLA, codified at I.C. §34-20-1-1, *et seq.* At all times relevant hereto, Mr. Bledsoe was a resident of Porter County, Indiana. Further, at all times relevant hereto, Medtronic was actively selling implantable infusion pumps and otherwise conducting business within the State of Indiana.

8. Venue is proper to Porter County pursuant to the Indiana Rules of Trial Procedure ("T.R."), Rule 75(A)(5), as the judicial district in which Mr. Bledsoe resides and has resided at all times relevant hereto.

## JURY DEMAND

9. Plaintiff demands a trial by jury in this action on each of his claims set forth herein.

## PARTIES

10. At all times relevant hereto, Plaintiff Kirk J. Bledsoe was a resident of Porter County, located within the State of Indiana, and has continuously resided at 3255 Hickory Street, Portage, IN 46368.

11. At all times relevant hereto, Defendant Medtronic, Inc., was engaged in the sale and monitoring of implantable infusion pumps in the State of Indiana. Medtronic, Inc.'s Principal Executive Office is located at 20 Lower Hatch Street, Dublin 2, Ireland. Medtronic Inc.'s Operational Headquarters is located at 710 Medtronic Parkway, Minneapolis, Minnesota 55432. Further, at all times relevant hereto, Medtronic has maintained a regional office in the State of Indiana, located at 2500 Silveus Crossing, Warsaw, IN 46582, was duly authorized to conduct business within the State of Indiana, and was actively engaged, directly and/or through its employees and agents, in business operations within the State of Indiana.

## STATEMENT OF FACTS

12. Plaintiff incorporates and realleges by reference rhetorical paragraphs 1 through 11 as if they were set forth fully herein.

13. On March 22, 2008, Medtronic issued a Class 1 recall on the Medtronic SynchroMed II Programmable Pump, model 8637-40. The FDA determined the cause of the recall was related to the device design.

14. On January 26, 2009, Medtronic issued a Class 2 recall on the Medtronic SynchroMed II Programmable Pump, model 8637-40. The FDA determined the cause of the recall related to labeling change control.

15. On February 10, 2011, Medtronic issued a Class 1 recall on the Medtronic SynchroMed II Programmable Pump, model 8637-40.

16. On June 14, 2011, Mr. Bledsoe was implanted with a Medtronic SynchroMed II Pump, model 8637-40, sold to him by Medtronic in the State of Indiana.

17. On March 30, 2012, Medtronic issued a Class 2 Recall on the Medtronic SynchroMed II Pump, model 8637-40. The FDA determined the cause of the recall to be a defective software design.

18. On December 13, 2012, Medtronic issued a Class 1 Recall on the Medtronic SynchroMed II Pump, model 8637-40. The FDA determined the cause of the recall to be a nonconforming material and/or component in the manufacturing process.

19. On June 25, 2013, Medtronic issued a Class 1 Recall on the Medtronic SynchroMed II Pump, model 8637-40. The FDA determined the cause of the recall to be a defective device design.

20. On June 25, 2013, Medtronic issued a separate Class 1 Recall on the Medtronic SynchroMed II Pump, model 8637-40. The FDA determined the cause of the recall to be a defective device design.

21. On May 8, 2014, Medtronic issued a Class 2 Recall on the Medtronic SynchroMed II Pump, model 8637-40. The cause of the recall is still under investigation.

22. On December 19, 2016, Medtronic issued a Class 1 Recall on the Medtronic SynchroMed II Pump, model 8637-40. The cause of the recall is still under investigation.

23. On March 29, 2017, Medtronic issued a Class 2 Recall on the Medtronic SynchroMed II Pump, model 8637-40. The cause of the recall is still under investigation.

24. Mr. Bledsoe never received notice of any of the foregoing recalls issued by Medtronic, despite the fact that he was implanted by a device he purchased from Medtronic that was the subject of the foregoing recalls issued by Medtronic.

25. Between January 5, 2015 and January 31, 2015, Mr. Bledsoe had a series of implantable pump evaluations at Methodist Hospital, located at 8701 Broadway, Merrillville, Indiana 46410. Medtronic representatives were present for the evaluations. Mr. Bledsoe was not informed of any of the recalls related to his device and was led to believe his pump was still in perfect working order.

26. Between November 4, 2015 and November 25, 2015, Mr. Bledsoe had another series of implantable pump evaluations and maintenance procedures at Methodist Hospital. Again, Mr. Bledsoe was not informed of any of the recalls related to his device and was led to believe his pump was still in perfect working order.

27. On December 7, 2015, Mr. Bledsoe's implantable infusion pump malfunctioned, resulting in an emergency trip to Methodist hospital. Mr. Bledsoe's pump was evaluated, he was still not informed of any recalls related to his device, and Mr. Bledsoe was led by a representative of Medtronic to believe his pump was still in perfect working order.

28. On or about December 29, 2015, Mr. Bledsoe's implantable infusion pump malfunctioned again, resulting in another emergency trip to Methodist hospital. Mr. Bledsoe was hospitalized from December 20, 2015 through January 4, 2016, during which time it was determined that the motor on his implantable infusion pump had stalled completely. Mr. Bledsoe was evaluated by a Medtronic representative, who advised that the pump had re-started and no further evaluation was necessary. Mr. Bledsoe was still not advised of any of the recalls related to his device, and his request for the Medtronic representative to further evaluate the pump was denied by the Medtronic representative, who performed no further evaluation of the device.

29. Following the device malfunction occurring on December 29, 2015, Mr. Bledsoe's implantable infusion pump continued to malfunction, resulting in a stalled motor and ultimately total failure of the medical device.

30. On or about October 27, 2016, Mr. Bledsoe was forced to have the defective medical device explanted at Methodist Hospital located at 600 Grant Street, Gary, Indiana 46402.

31. The SynchroMed II infusion pump, model 8637-40, implanted into Mr. Bledsoe, was designed, manufactured, marketed, and sold by Defendant Medtronic.

32. The SynchroMed II infusion pump, model 8637-40, implanted into Mr. Bledsoe, was monitored and periodically maintained by and/or under the supervision of Medtronic employees, agents, and/or representatives.

33. As a direct and proximate result of the defective condition of the The SynchroMed II infusion pump, model 8637-40, implanted into Mr. Bledsoe, Mr. Bledsoe suffered and continues to suffer substantial medical expenses, loss of the quality of life, severe and permanent pain and suffering, depreciated and impaired marital relationship, severe and permanent physical impairment, and other damages.

### Count I – Negligence

34. Plaintiff incorporates and realleges by reference rhetorical paragraphs 1 through 33 as if they were set forth fully herein.

35. At all times relevant hereto, Defendant Medtronic had a duty to reasonably package, label, and market the SynchroMed II implantable infusion pump, model 8637-40, in a manner

4

that reasonably warned healthcare providers and users, including Mr. Bledsoe, of the dangers of using the product as it was intended and marketed to be used.

36. At all times relevant hereto, Defendant Medtronic had a duty to exercise reasonable diligence in giving reasonably complete instructions for proper use of the product to health care providers and users, including Mr. Bledsoe, and by making reasonably complete instructions and warnings about the product available to healthcare providers and users, including Mr. Bledsoe.

37. At all times relevant hereto, Defendant Medtronic had a duty to exercise reasonable care, and to comply with the existing standards of care, in its preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion, and sale of implantable infusion pumps, which Defendant Medtronic introduced into the stream of commerce and sold in the State of Indiana, including a duty to ensure that users would not suffer unreasonable, dangerous, and/or severe physical and emotional harm.

38. At all times relevant hereto, Defendant Medtronic prepared, designed, researched, developed, manufactured, inspected, labeled, marketed, promoted, and sold the SynchroMed II implantable infusion pump, model 8637-40, with a concealed danger to users including Mr. Bledsoe.

39. At all times relevant hereto, Defendant Medtronic knew or reasonably should have known of the concealed danger.

40. At all times relevant hereto, Defendant Medtronic was negligent in failing to reasonably and adequately warn healthcare providers and users, including Mr. Bledsoe, of that danger.

41. At all times relevant hereto, Defendant Medtronic was negligent in failing to advise healthcare providers and users, specifically Mr. Bledsoe, of the numerous recalls and known defects associated with the product implanted in Mr. Bledsoe and the unreasonable dangers and harms associated therewith.

42. Defendant Medtronic's negligence in failing to reasonably and adequately warn of this concealed danger of which it knew or reasonably should have known directly and proximately caused Mr. Bledsoe's injuries including, without limitation, substantial medical expenses, loss of the quality of life, severe and permanent pain and suffering, depreciated and impaired marital relationship, severe and permanent physical impairment, and other damages.

WHEREFORE, Plaintiff, Kirk J. Bledsoe, prays that this Court enter judgment for the Plaintiff against Defendant Medtronic herein and grant relief as follows:

A. Award Plaintiff compensatory and consequential damages, including without limitation damages for medical expenses, loss of the quality of life, severe and permanent pain and suffering, and severe and permanent physical impairment;

B. Award Plaintiff economic losses on all claims permitted by law;

C.  Award Plaintiff special damages in an amount to be determined at trial or otherwise;

D.  Award Plaintiff attorneys' fees and the costs associated with this action, including expert witness fees, as permitted by law;

E.  Award Plaintiff pre- and post-judgment interest as permitted by law; and

F.  Award any and all further relief as this Court deems appropriate and equitable.

Respectfully submitted,

By: _____
Andrew J. Spica (#32157-64)
Attorney for Plaintiff
VOUGA & BARNES, LLC
3363 Willowcreek Road
Portage, IN 46368
(219) 763-0754
(219) 763-6529 (fax)
aspica@vougalawfirm.com
bziegler@vougalawfirm.com

### Count II – Negligence

43. Plaintiff incorporates and realleges by reference rhetorical paragraphs 1 through 42 as if they were set forth fully herein.

44. At all times relevant hereto, Defendant Medtronic had a duty to exercise reasonable care, and to comply with the existing standards of care, in its preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion, and sale of implantable infusion pumps, which Defendant Medtronic introduced into the stream of commerce and sold in the State of Indiana, including a duty to ensure that users would not suffer unreasonable, dangerous, and/or severe physical and emotional harm.

45. At all times relevant hereto, Defendant Medtronic had a duty to comply with all applicable codes, standards, regulations, testing standards and requirements, research standards and requirements, quality control standards and requirements, inspection standards and requirements, labeling stands and requirements, promotion standards and requirements, and/or specifications established, adopted, promulgated, or approved by the United States, the State of Indiana, or by any agency of the United State or Indiana including the FDA.

46. At all times relevant hereto, Defendant Medtronic was negligent in failing to exercise reasonable care and to comply with existing standards of care in its preparation, design, research,

6

development, manufacture, inspection, labeling, marketing, promotion, and sale of implantable infusion pumps.

47. At all times relevant hereto, Defendant Medtronic was negligent in failing to exercise reasonable care and in failing to reasonably and adequately comply with applicable codes, standards, regulations, testing standards and requirements, research standards and requirements, quality control standards and requirements, inspection standards and requirements, labeling stands and requirements, promotion standards and requirements, and/or specifications established, adopted, promulgated, or approved by the United States, the State of Indiana, or by any agency of the United State or Indiana including the FDA.

48. At all times relevant hereto, Defendant Medtronic was negligent in failing to reasonable and adequately research, test, design, develop, manufacture, control, inspect, monitor, and/or otherwise take reasonable precautions in the design, production, and manufacture of its implantable infusion pumps to prevent unreasonable injuries to users, including Mr. Bledsoe.

49. As a direct and proximate result of Defendant Medtronic's negligence in the research, testing, design, development, manufacture, control, inspection, and/or monitoring of its implantable infusion pumps, Mr. Bledsoe suffered injuries and damages including, without limitation, substantial medical expenses, loss of the quality of life, severe and permanent pain and suffering, depreciated and impaired marital relationship, severe and permanent physical impairment, and other damages.

WHEREFORE, Plaintiff, Kirk J. Bledsoe, prays that this Court enter judgment for the Plaintiff against Defendant Medtronic herein and grant relief as follows:

A. Award Plaintiff compensatory and consequential damages, including without limitation damages for medical expenses, loss of the quality of life, severe and permanent pain and suffering, and severe and permanent physical impairment;

B. Award Plaintiff economic losses on all claims permitted by law;

C. Award Plaintiff special damages in an amount to be determined at trial or otherwise;

D. Award Plaintiff attorneys' fees and the costs associated with this action, including expert witness fees, as permitted by law;

E. Award Plaintiff pre- and post-judgment interest as permitted by law; and

F. Award any and all further relief as this Court deems appropriate and equitable.

Respectfully submitted,

By: /s/ Andrew J. Spica

Andrew J. Spica (#32157-64)
Attorney for Plaintiff
VOUGA & BARNES, LLC
3363 Willowcreek Road
Portage, IN 46368
(219) 763-0754
(219) 763-6529 (fax)
aspica@vougalawfirm.com
bziegler@vougalawfirm.com

## Count III – Strict Liability

50. Plaintiff incorporates and realleges by reference rhetorical paragraphs 1 through 49 as if they were set forth fully herein.

51. Plaintiff is in the class of persons that Defendant Medtronic should reasonably foresee as being subject to the harm caused by its defective implantable infusion pumps insofar as Mr. Bledsoe was the type of person for whom Defendant's implantable pain pumps were intended to be used.

52. At all times relevant hereto, Defendant Medtronic was engaged in the business of selling implantable infusion pumps. Defendant Medtronic designed, manufactured, and supplied implantable infusion pumps and placed them into the stream of commerce by selling implantable infusion pumps in a defective and unreasonably dangerous condition such that the foreseeable risks of harm exceeded the intended benefits associated with the design and/or formulation of the product.

53. The implantable infusion pump was expected to, and did, reach Plaintiff Kirk Bledsoe without substantial alteration in the condition in which the product is sold by Defendant Medtronic.

54. At all times relevant hereto, the implantable infusion pump manufactured by Defendant Medtronic was in an unreasonably dangerous and defective condition beyond the extent contemplated by ordinary health care providers and patients, including Mr. Bledsoe, with ordinary knowledge regarding these products.

55. At all times relevant hereto, Defendant Medtronic knew or reasonably should have known of the unreasonably dangerous and defective condition of its implantable infusion pumps which it designed, manufactured, and sold to healthcare providers and users, including Mr. Bledsoe.

8

56. The unreasonably dangerous product defects alleged herein directly and proximately caused Mr. Bledsoe's injuries and damages including, without limitation, substantial medical expenses, loss of the quality of life, severe and permanent pain and suffering, depreciated and impaired marital relationship, severe and permanent physical impairment, and other damages.

WHEREFORE, Plaintiff, Kirk J. Bledsoe, prays that this Court enter judgment for the Plaintiff against Defendant Medtronic herein and grant relief as follows:

A. Award Plaintiff compensatory and consequential damages, including without limitation damages for medical expenses, loss of the quality of life, severe and permanent pain and suffering, and severe and permanent physical impairment;

B. Award Plaintiff economic losses on all claims permitted by law;

C. Award Plaintiff special damages in an amount to be determined at trial or otherwise;

D. Award Plaintiff attorneys' fees and the costs associated with this action, including expert witness fees, as permitted by law;

E. Award Plaintiff pre- and post-judgment interest as permitted by law; and

F. Award any and all further relief as this Court deems appropriate and equitable.

Respectfully submitted,

By: _____

Andrew J. Spica (#32157-64)
Attorney for Plaintiff
VOUGA & BARNES, LLC
3363 Willowcreek Road
Portage, IN 46368
(219) 763-0754
(219) 763-6529 (fax)
aspica@vougalawfirm.com
bziegler@vougalawfirm.com

9